UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF NEW YORK
Civil Action, File Number

-----------------------------------------------------------X
STEVEN PLOSKI,                          )
                                        )
                Plaintiff,              )        COMPLAINT
                                        )
                                        )
        v.                              )
                                        )
                                        )
ANDREW PELLEGRINI INDIVIDUALLY,         )
ANDREW PELLEGRINI IN HIS OFFICIAL       )        08 CIV. 0077
CAPACITY, JOHN TWOMEY INDIVIDUALLY,     )
JOHN TWOMEY IN HIS OFFICIAL CAPACITY,   )
THE CITY OF YONKERS and THE YONKERS     )        JUDGE CONNER
POLICE DEPARTMENT,                      )
                                        )
                Defendants.             )
-----------------------------------------------------------X

STEVEN PLOSKI, through his attorney, JOHN A. RAIMONDO,

alleges and states as follows:


**INTRODUCTION**


1.  Plaintiff, Steven Ploski, brings this action against two police officers in their

    individual and official capacities, the City of Yonkers and the Yonkers Police

    Department, arising out of his false arrest, the malicious and sadistic use of

    excessive force and other unconstitutional customs, practices, policies, actions

    and omissions, related to, and arising out of a false arrest of the plaintiff, on

    January 6, 2005, in the City of Yonkers, County of Westchester, State of New

    York.

## JURISDICTION

2. Plaintiff brings this action against defendants, pursuant to 42 U.S.C. Section 1983, to redress the deprivation of rights secured plaintiff by the Fourth Amendment of the United States Constitution.

3. Plaintiff is a citizen of the State of New York.

4. Each defendant named herein, is upon information and belief, a resident of the State of New York, and at least one defendant, the City of Yonkers, resides in the Southern District of New York.

5. Each defendant is a person within the meaning of 42 U.S.C. Section 1983.

6. The Court has jurisdiction over this matter pursuant to 1343(a)(3) and 42 U.S.C. Section 1983.

7. Venue is proper in this District pursuant to 28 U.S.C. 1391(b).

8. All acts complained of occurred in the Southern District of New York.

## PARTIES

9. Plaintiff is a resident of the State of New York, County of Westchester, City of Yonkers.

10. Plaintiff, at all relevant times, resided at 4 Sunnybrook Road, in the City of Yonkers.

11. Defendant, City of Yonkers, operates and governs the City of Yonkers Police Department pursuant to the laws of the State of New York.

12. The City of Yonkers is located in the County of Westchester, State of New York, with its principal place of operation being 40 South Broadway, City Hall, Room 300, Yonkers, New York 10701-3883.

13. Andrew Pellegrini and John Twomey are sued in their individual capacities and in their official capacities.

14. At all pertinent times, Andrew Pellegrini was employed by the City of Yonkers Police Department in the capacity of police officer.

15. At all relevant times, John Twomey was employed by the City of Yonkers Police Department in the capacity of police officer.

16. Upon information and belief, in addition to working in their official capacity at 100-104 South Broadway, Yonkers, New York, 10701, Andrew Pellegrini and John Twomey reside in the State of New York.

17. The Yonkers Police Department maintains its principal headquarters at 100-104 South Broadway, Yonkers, New York 10701.

18. At all pertinent times, Andrew Pellegrini and John Twomey acted under color of state law, in that, on January 6, 2005, while on duty with the Yonkers Police Department, they, along with another Yonkers police officer, responded to a report of a domestic dispute, at 4 Sunnybrook Road, in the City of Yonkers, resulting in the false arrest of the plaintiff and the use of excessive force against him.

## FACTS

19. On January 6, 2005, the Yonkers Police Department received a report of a domestic dispute, at 4 Sunnybrook Road, in the City of Yonkers.

20. The report of January 6, 2005, referred to in paragraph "19" was made by Audrey Ploski.

21. In response to the report referred to in paragraphs "19" and "20" herein, three police officers employed by the Yonkers Police Department went to 4 Sunnybrook Road, in the City of Yonkers, for the purpose of investigating the report.

22. The three police officers responding to the report included Andrew Pellegrini and John Twomey.

23. Upon arrival at 4 Sunnybrook Road, it was determined that the plaintiff Steven Ploski, and his wife, Audrey Ploski, had a verbal dispute.

24. Specifically, the plaintiff informed the police officers that he and Audrey Ploski had a verbal dispute regarding, in part, his back condition.

25. The plaintiff was informed that there was no legal basis to make an arrest.

26. The police officers exited the premises.

27. The plaintiff's brother, William Ploski, was present during the initial police investigation.

28. William Ploski is an attorney and a member of the New York State Bar.

29. William Ploski exited the home, to request the police officers to speak to the plaintiff further.

30. The police officers entered the premises and immediately, upon entering, without any questions, investigation or probable cause, informed the plaintiff he was under arrest.

31. The plaintiff was thrown to the ground/floor with the police officers piling on top of him and while the officers, in a violent, cruel, malicious, inhuman, sadistic, aggressive, forceful and excessive manner, contorted plaintiff's body and limbs in various directions, placed their weight on his body and forced their knees into him.

32. William Ploski, Audrey Ploski and Jessie Ploski observed the incident.

33. During the unreasonable seizure and cruel and unusual treatment of the plaintiff, William Ploski and Audrey Ploski were yelling at the police officers to get off of the plaintiff, that his arrest was unjustified, that the plaintiff had serious back problem, that the officers were hurting the plaintiff and that the plaintiff could be injured and crippled by virtue of the force which was being used.

34. The plaintiff, all the while, was telling the officers that he was in pain, and that the officers were hurting him.

35. The plaintiff was handcuffed and picked up by the handcuffs which were on him, in an excessively forceful manner.

36. The plaintiff was pushed head first into a wall, down a hall way, down a stairwell, while being pulled back by the handcuffs.

37. William Ploski continued to state in an affirmative tone, that the plaintiff was being abused, that the officers should stop brutalizing the plaintiff and that the plaintiff had not done anything to justify his arrest and the plaintiff was in serious threat of serious injury.

38. William Ploski was told to shut up or that he would get the same as the plaintiff and that he would also be arrested.

39. The police officers ignored William Ploski's protest and continued their attack against plaintiff.

40. When the plaintiff arrived at the police car, he was slammed onto the trunk of the car, his arms were jerked and forced backwards in order to cause pain and injury, while he was handcuffed.

41. The handcuffs during this entire incident were secured so tightly that the plaintiff was screaming in pain the pleading for the officers to relent and to loosen the handcuffs.

42. The plaintiff's head was bashed into the upper door-jam twice as he was being put into the car.

43. Thereafter, the plaintiff was taken to the Yonkers Police Department and booked on Menacing in the Third Degree, pursuant to Penal Law Section 120.15 and Resisting Arrest, pursuant to Penal Law Section 205.3.

44. While at the Yonkers Police Department, the plaintiff requested that he be taken to a hospital.

45. The plaintiff was told that he would be taken to a hospital far away, that after, he would be taken to the County Jail and that it would take longer to see a Judge to be arraigned if he was to go to the hospital.

46. The plaintiff stated that he would deal with the pain, in order to get to a Judge more expeditiously.

47. The plaintiff was arraigned the next day and was released on his own recognizance.

48. The plaintiff was arraigned on an accusatory instrument dated January 7, 2005 and charged with Resisting Arrest in violation of Penal Law Section 205.30, Obstructing Governmental Administration in violation of Penal Law Section 195.05 and Harassment in the Second Degree, in violation of Penal Law Section 240.26.

49. Within a few days of being released, the plaintiff was still in serious pain and experiencing other physical symptoms, including the inability to control his bowels, and as such, contacted his physician.

50. Upon visiting with his physician, the plaintiff was told, that as result of the incident detailed herein, he required surgery on his back.

51. The plaintiff underwent surgery.

52. As a direct and proximate result of the acts and omissions of defendants, plaintiff continues to, among other things, feel pain, suffer from a high level of immobility, suffer from serious permanent injuries, was caused to suffer pain, mental anguish, was caused to suffer permanent physical and emotional damage, and was forced to incur medical expenses, legal expenses, and to incur a loss of past and future earnings and past and future ability to enjoy life.

53. At all times pertinent to these allegations, plaintiff was unarmed, posed no threat of death or bodily injury to defendants and was in no way responsible for the injuries he sustained.

54. At all pertinent times, there was no probable cause for the plaintiff's arrest.

55. The accusatory instrument pursuant to which the plaintiff was charged, only alleges, relative to the plaintiff's conduct towards Audrey Ploski, that the plaintiff,

during a verbal argument with Audrey Ploski, kept the victim from sleeping, as he stood over her and yelled at her, refusing to let her sleep; these allegations, even assuming they were to be true, do not provide probable cause for an arrest.

56. The accusatory instrument, the police report and the supporting statement of Audrey Ploski are devoid of any specific conduct of the plaintiff which would lead a reasonable officer to the conclusion that they have probable cause to make an arrest.

57. At all pertinent times, there was no justification for the level of force used by the police officers referenced herein.

58. There was no justification to use deadly physical force or force which could cause serious bodily injury.

59. The force used by police officers could not be justified in self defense.

60. The criminal prosecution which ensued as a result of plaintiff's arrest was disposed of, on October 5, 2005, pursuant to the New York State Criminal Procedure Law, by an adjournment in contemplation of dismissal.

61. The police officers referred to herein, acted with actual malice towards plaintiff and with willful, wanton indifference to and with deliberate disregard for the statutory and constitutional rights of plaintiff.

62. The actions of the officers constitute an unreasonable and an excessive use of force in violation of the plaintiff's Fourth Amendment rights.

63. At all times pertinent, the City of Yonkers had a formal official policy not to have an independent civilian complaint review board.

64. The City of Yonkers, through its City Council and through its Mayor, at all relevant times, had the authority to create an independent civilian complaint review board.

65. The Mayor of Yonkers and the Yonkers City Council are policy maker within the City of Yonkers.

66. The Police Commissioner of the City of Yonkers is a policy maker.

67. The Yonkers City Council, has affirmatively rejected, at formally rejected least one proposal to create an independent civilian complaint review board, before January 6, 2005.

68. The Yonkers City Council and/or the Mayor of Yonkers were aware, or should have been aware, that the creation of an independent civilian complaint review board, would result in an enhanced ability to investigate and discipline incidents of excessive force on the part of police officers within the Yonkers Police Department, and further, to supervise and train officers relative to the use of excessive force.

69. By failing to, among other things, create an independent civilian complaint review board, the City of Yonkers permitted the police officers of the Yonkers Police Department to implement or execute its official policy, including, but not limited to the individual officers named herein and its police commissioner.

70. The City of Yonkers was aware, at all relevant times, or should have been aware, at all relevant times, the that the Police Commissioner within its City was overseeing the discipline of its officers with the sole benefit of an internal review board.

71. At all pertinent times, the review board within the Yonkers Police Department has been called the police professional standards review committee.

72. The police professional standards review committee, has at all relevant times, been comprised entirely, or almost entirely, of board members selected at the sole discretion of the Police Commissioner.

73. At all relevant times, almost the entire committee has been comprised of members who are employees of the Yonkers Police Department.

74. The City of Yonkers was aware, at all relevant times, that various individuals and groups throughout the City were requesting the creation of an independent civilian complaint review board.

75. The City of Yonkers, at all relevant times, by virtue of the affirmative act and omission of failing and refusing to create an independent civilian complaint review board, had an official policy of failing to train, supervise and discipline its officers with regard to excessive force, and therefore, encouraging the use of excessive force.

76. The City of Yonkers, at all relevant times, had a custom, by virtue of the practices of its Policy Makers, including its Mayor, Police Commissioner and City Council, of encouraging the use of excessive force on the part of its police officers, by failing to, among other things, create an independent civilian complaint review board, by failing to train, supervise and to discipline its officers.

77. At all relevant times, the custom of the City of Yonkers and it Police Department, to inadequately train and/or supervise, has demonstrated a deliberate indifference

to the rights of the individuals and/or entities which the officers of the Yonkers Police Department would interact with, including, but not limited to the plaintiff.

78. This deliberate indifference is evidenced, by among other things, the failure to create a civilian complaint review board, in the face of repeated reports of excessive force, in the face of repeated requests for creation of such a board, the awareness that most large cities throughout the country, including the City of New York, have such a board.

79. The custom of inadequate training and supervision actually caused the excessive force which has been used by the police officers of the Yonkers Police Department, including those named herein, on January 6, 2005.

80. It was plainly obvious or should have been plainly obvious, at all relevant times, to the City of Yonkers policy makers, that further training and supervision was necessary, especially, in view of among other things, the epidemic of excessive force allegations in the City of Yonkers.

81. The Yonkers Police Department permitted and tolerated, a pattern and practice of unreasonable use of force by police officer of the City of Yonkers Police Department.

82. Upon information and belief, the City of Yonkers and its Police Department, has maintained a system of review of police conduct so untimely, cursory and insufficient, as to be ineffective and to permit and tolerate the unreasonable and excessive use of force by their police officers.

83. The acts, omissions, systemic flaws, policies and customs of the City of Yonkers and its Police Department caused Police Officers of the Yonkers Police

Department, including, but mot limited to the police officers named herein to believe that excessive and unreasonable force would not be aggressively, honestly and properly investigated, with the likely result that officers are more likely to use excessive and/or unreasonable force against the plaintiff and others.

84. The City of Yonkers has, at all relevant times, had a custom and practice of failing to adequately discipline, train, supervise and investigate police officers who are involved and/or alleged to be involved in incidents involving excessive force, which has been, at all relevant times, well known to its Policy Makers, including its Mayor, City Council and Police Commissioner.

85. The Yonkers Police Department has a long standing custom and practice of failing to adequately discipline and investigate incidents and allegations of excessive force.

86. The policy makers of the City of Yonkers, along with the policy makers of its Police Department are aware of the custom and practice detailed in the paragraph above.

87. The City of Yonkers and its Police Department have at all relevant times, failed to adequately train and supervise their police officers; namely in view of the previous pattern of violations, in the form of excessive force, which have been brought to the attention of the City of Yonkers, its Policy Makers and its Police Department.

88. If the City of Yonkers and/or its policy makers and/or its Police Department had taken the necessary steps to adequately train, supervise and discipline and investigate Police Officers, at to the use of force, including excessive force, the

high number of violations, including the violation of the plaintiff's rights alleged herein, would not have occurred.

89. The policy makers of the City of Yonkers and/or its Police Department and/or the City of Yonkers have at all relevant times been aware of the wide spread excessive force and/or allegations of excessive force, as it has been, and continues to be, plainly obvious.

90. The policy makers of the City of Yonkers and/or its Police Department and/or the City of Yonkers have been deliberately indifferent to the high likelihood of continued use of excessive force on the part of officers of the Yonkers Police Department.

91. It was plainly obvious to the policy makers of the City of Yonkers and/or its Police Department and/or the City of Yonkers that further training and supervision of the Police Officers of the City of Yonkers has been and continues to be necessary, in view of the high number of reports of excessive force.

92. In this case, in addition to municipal liability being clear based on a custom and failure to train-supervise, it is clear through a plain and natural inference, based on the conduct of the multiple officer involved in the incident occurring on January 6, 2005, as alleged herein, that official policy and custom condones the use of excessive force.

93. The inadequate training and supervision, amounts to a deliberate indifference to the rights of the public and was the proximate cause of the deprivation of the plaintiff's rights alleged herein.

94. The custom of excessive force alleged herein is widespread and repetitive.

95. The Yonkers Police Department has a long standing history of police brutality, including the beating, in 1993, of two handcuffed Irish immigrants, which resulted in the payment of $700,000.00 to settle a civil action.

96. The Corporation Council of Yonkers at the time, William Mooney, stated that the civil settlement in the Irish immigrant case was a "business decision" and that he did not believe that the Police Officers had violated constitutional rights, despite the fact that Dr. Michael Baden, then director of forensic science for the New York State Police, had testified at a civil deposition, that the welts observed on one of the victim's back were textbook examples of nightstick beatings.

97. In 1993, in the wake of the Irish immigrant case referred to above, the then Mayor of Yonkers, along with the then Police Commissioner, publicly declared that an eight member committee would be created to review complaints of police brutality and police misconduct; the "Police Standards Review Committee".

98. The Yonkers "Police Standards Review Committee" according to the City's own website, has seven of its eight members selected by the Police Commissioner him or herself, with only four of its members being "civilian panelists"; hence not an independent civilian complaint review board.

99. At all relevant times, the Committee did not have, upon information and belief, its own investigators and lawyers, as many similar committees have; rather the committee called on the Police Commissioner and the Mayor to subpoena the testimony and/or records it needs.

100.      The Mayor, upon information and belief, had at all relevant times, the authority to establish an independent committee, along with certain other

budgetary and appointive authority, without the approval of the City Council, yet has failed to do so.

101.    At all relevant times, the Police Commissioner, also according to the City's own website, was responsible for taking action relative to cases which come before the Committee; hence the Commissioner acts a policy maker, along with the Mayor and his or her administration.

102.    The Yonkers Police Department, at all relevant times, including its current administration, has resisted establishing an independent civilian complaint board, by stating, among other things, that such a board existed in New York City and was staffed by inexperienced investigators.

103.    In August 2007, Mayor Amicone announced that the United States Department of Justice is investigating police brutality in the City of Yonkers, yet the Mayor denies the brutality.

104.    At all relevant times, the Police Standards Committee has been part of the Internal Affairs Division of the Yonkers Police Department.

105.    The City of Yonkers, its policy makers and its Police Department, are aware, upon information and belief, that a recent FBI Bulletin states the benefits to law enforcement agencies as a result of independent committee input; namely with regard to supervising and training officers.

106.    At all relevant times, the Yonkers City Council, has rejected proposals for a civilian complaint review board, and has yet to establish a civilian complaint review board.

107.     At all pertinent times, the Mayor of Yonkers, the Police Commissioner

and the Yonkers City Council have failed to establish a civilian complaint review

board.

108.     At all pertinent times, the Mayor of Yonkers and the Yonkers City

Council, each, on their own initiative, without the approval of the other, possessed

the authority to establish a civilian complaint review board.

109.     The Department of Justice opened an investigation into police brutality in

the City of Yonkers, as a result of credible information justifying an in inquiry

into whether a policy and/or practice of excessive force exists within the Yonkers

Police Department.


### COUNT ONE

**ANDREW PELLEGRINI and JOHN TWOMEY INDIVIDUALLY AND IN
THEIR OFFICIAL CAPACITY 42 U.S.C. SECTION 1983 POLICE
BRUTALITY/EXCESSIVE FORCE**

110.     Plaintiff incorporates by reference paragraphs 1 through 109 above.

111.     The unreasonable and excessive use of force against the plaintiff, by

members of the Yonkers Police Department, including Andrew Pellegrini and

John Twomey, while acting under color of state law, violated the rights of the

plaintiff as guaranteed by the Fourth Amendment, to the United States

Constitution, for which the defendant officers are individually and officially

liable.

112.     The plaintiff has a remedy available to him to vindicate the Fourth

Amendment violation alleged herein, pursuant to 42 U.S.C. Section 1983.

113.     Andrew Pellegrini and John Twomey are individually and officially liable to the plaintiff for compensatory damages.

114.     Andrew Pellegrini and John Twomey are individually and officially liable to the plaintiff for punitive damages in that they intentionally, wantonly, willfully and maliciously brutalized the plaintiff, when the plaintiff was unarmed, did not pose a threat of injury to defendants and when the circumstances did not reasonably justify the level of force used.

115.     The officers named herein, acted with actual malice, evil intent, willful mind, and wanton indifference to, and in deliberate disregard for the constitutional rights of plaintiff.

116.     Andrew Pellegrini and John Twomey, along with the third Yonkers police officer used excessive and unreasonable force against the plaintiff while effecting his arrest, up and through the time he arrived in the police vehicle which transported him to the Yonkers Police Department for booking, all of which violated the plaintiff's Fourth Amendment Rights.

117.     Relative to his cause of action against the police officers named herein, the plaintiff seeks compensatory damages, punitive damages and attorneys fees.

118.     As a result of the conduct of the officers named herein, the plaintiff was proximately caused to feel pain, suffer from a high level of immobility, suffer from serious permanent injuries, suffer from mental anguish, was caused to suffer permanent physical and emotional damage, and was forced to incur medical expenses, legal expenses, and to incur a loss of past and future earnings and past and future ability to enjoy life.

119.    The conduct of the defendant officers was the proximate cause, direct causal connection and affirmative link to plaintiff's injuries, including, but not limited to the violation of his Fourth Amendment Rights.

## COUNT TWO

### ANDREW PELLEGRINI and JOHN TWOMEY INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITY 42 U.S.C. SECTION 1983 FALSE ARREST

120.    Plaintiff incorporates by reference paragraphs 1 through 119 above.

121.    On January 6, 2005, the plaintiff was arrested without probable cause, by police officers of the Yonkers Police Department, including Andrew Pellegrini and John Twomey.

122.    The plaintiff was arrested under circumstances where he was merely involved in a verbal dispute with his wife, which did not include any conduct which amounted to a violation of the Penal Law of the State of New York.

123.    On January 6, 2005, or at any relevant time, there was no statement or any other information given by Audrey Ploski or any other person, to the investigating officers, which would lead a reasonable officer to believe they had probable cause to arrest the plaintiff.

124.    The plaintiff was falsely arrested by members of the Yonkers Police Department, including Andrew Pellegrini and John Twomey, while they acted under color of state law, violating the rights of the plaintiff as guaranteed by the Fourth Amendment, to the United States Constitution, for which the defendant officers are individually and officially liable.

125.    The plaintiff has a remedy available to him to vindicate the Fourth Amendment violation alleged herein, pursuant to 42 U.S.C. Section 1983.

126.    Andrew Pellegrini and John Twomey are individually and officially liable to the plaintiff for compensatory damages.

127.    Andrew Pellegrini and John Twomey are individually and officially liable to the plaintiff for punitive damages in they intentionally, wantonly, willfully and maliciously falsely arrested the plaintiff.

128.    The officers named herein, acted with actual malice, evil intent, willful mind, and wanton indifference to, and in deliberate disregard for the constitutional rights of plaintiff.

129.    Relative to his cause of action for false arrest against the police officers named herein, the plaintiff seeks compensatory damages, punitive damages and attorneys fees.

130.    As a result of the conduct of the officers named herein, the plaintiff was proximately caused to feel pain, suffer from a high level of immobility, suffer from serious permanent injuries, suffer from mental anguish, was caused to suffer permanent physical and emotional damage, and was forced to incur medical expenses, legal expenses, and to incur a loss of past and future earnings and past and future ability to enjoy life.

131.    The conduct of the defendant officers was the proximate cause, direct causal connection and affirmative link to plaintiff's injuries, including, but not limited to the violation of his Fourth Amendment Rights.

132.    The disposition of the criminal prosecution with an adjournment in contemplation of dismissal pursuant to the New York State Criminal Procedure Law does not preclude the plaintiff from bringing a false arrest cause of action under 42 U.S.C. Section 1983.

133.    The police officers named herein intended to arrest the plaintiff.

134.    The plaintiff, at no time, consented to his being arrested.

135.    The plaintiff was cognizant of his being arrested.

136.    At no time were the police officers operating under a privilege sufficient to justify their actions.

137.    Plaintiff seeks an award on his false arrest claim for all damages sustained by him from the time of his arrest up and through the time of his arraignment.

## COUNT THREE

### THE CITY OF YONKERS and THE YONKERS POLICE DEPARTMENT
### 42 U.S.C. SECTION 1983 RESPONDEAT SUPERIOR

138.    Plaintiff incorporates by reference paragraphs 1 through 137 above.

139.    At all times pertinent hereto, the City of Yonkers and the Yonkers Police Department, through their policy makers, including, but not limited to its Police Commissioner, the Yonkers City Council and the Mayor of Yonkers authorized its agents, including the police officers named herein, to use excessive force, by, in the face of a plainly obvious patterns of excessive force, demonstrating a deliberate indifference to the training, disciple and supervision, which acts and omissions, were and continue to be the proximate, affirmative link and direct causal connection to the plaintiff's deprivation of plaintiff's Fourth Amendment

rights and the cause of his injuries, which would not have occurred, but for the formal policy and/or customs of the City of Yonkers.

140.    The City of Yonkers had, at all relevant times, a formal policy not to have an independent civilian complaint review board, as detailed in the paragraphs above.

141.    The City of Yonkers also had, at all relevant times, a custom of encouraging police brutality, evidenced by, among other things, the failure, refusal and resistance of its policy makers, at all relevant times, to establish an independent civilian complaint review board, with its own investigatory power and appointive authority, in the face of repeated allegations of police brutality and suggestions of an independent committee; and also, the failure of the Police Commissioner to take adequate steps to train, supervise, investigate and discipline police officers with the Yonkers Police Department.

142.    This custom of the City of Yonkers, is not only evidenced by its failure to create an independent civilian complaint review board and its failure to adequately train, supervise and discipline, but also by the conduct of multiple officers referenced herein on January 6, 2005.

143.    The City of Yonkers and the Yonkers Police Department are liable to the plaintiff for compensatory damages and attorneys fees under the doctrine of respondeat superior for the intentional, wanton, willful and malicious torts of the police officers named herein, committed within the scope of their employment.

144.    At all relevant times, it was the policy, practice and custom of the City of Yonkers and the Yonkers Police Department, through its policy makers, to

authorize police officers, including the officers named herein, to use excessive

which encouraged and proximately caused the police officers named herein to

violate the plaintiff's rights.

145.    At all pertinent times, the police officers named herein were acting within

the scope of their employment and pursuant to the policies, practices and customs

that were enforced, encouraged and supported by the City of Yonkers and the

Yonkers Police Department, and were the moving force and proximate cause of

the plaintiff's injuries, which the City of Yonkers and the Yonkers Police

Department are therefore, liable for, to the plaintiff.

146.    As a result of the conduct of the officers named herein, the plaintiff was

proximately caused to feel pain, suffer from a high level of immobility, suffer

from serious permanent injuries, suffer from mental anguish, was caused to suffer

permanent physical and emotional damage, and was forced to incur medical

expenses, legal expenses, and to incur a loss of past and future earnings and past

and future ability to enjoy life.

WHEREFORE, the plaintiff requests that this Court enter Judgment

against the defendants in the following manner:

On his First Cause of Action, against Andrew Pellegrini and John

Twomey, for compensatory damages, punitive damages and attorneys fees, in an

amount to be determined at trial, on his Second Cause of Action, against Andrew

Pellegrini and John Twomey, for compensatory damages, punitive damages and

attorneys fees, in an amount to be determined at trial on his Third Cause of

Action, against the City of Yonkers and the Yonkers Police Department, for

compensatory damages and attorneys fees, in an amount to be determined at trial,

together with, relative to both causes of action, interest, disbursements and costs,

together with such other and further relief this Court deems just and proper

A trial by jury is demanded by plaintiff on each of his causes of action.

Dated: White Plains, New York
January 3, 2008

JOHN A. RAIMONDO, P.C.

BY:    JOHN A. RAIMONDO JR8587
        Member of the Firm
        Attorney for Plaintiff
        399 Knollwood Road, Suite 303
        White Plains, New York 10603
        914-948-8309